**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                )
CAROLINE ROBINSON,              )
                                )
          Plaintiff,            )
                                )
          v.                    )  Civil Action No. 09-2294 (EGS)
                                )
DISTRICT OF COLUMBIA, *et al.*, )
                                )
          Defendants.           )
_____ )

<u>**MEMORANDUM OPINION**</u>

This matter is before the Court on (i) defendants' motion to dismiss the complaint or for partial summary judgment, and (ii) defendants' motion to strike certain materials plaintiff attached to her opposition to the motion to dismiss or for partial summary judgment. Upon consideration of the motions, the responses and replies thereto, the applicable law, and for the reasons set forth below, the motion to dismiss or for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**. The motion to strike will be **DENIED** as moot.

**I.    BACKGROUND**

This case arises from the death of Arnell Robinson, a 20 year old District of Columbia resident who was allegedly struck and killed by Metropolitan Police Department ("MPD") officer Michael Pepperman ("Officer Pepperman") on March 6, 2009. According to plaintiff's allegations, Mr. Robinson was riding his yellow motorcycle in the 400 block of O Street, Northwest at

approximately 3:00 p.m.  Mr. Robinson was unarmed and riding properly in his lane of traffic.  Compl. ¶¶ 14, 22.  Officer Pepperman, accompanied by MPD officer Gina Leveque, was driving an unmarked police car traveling in the opposite direction.  Compl. ¶ 15.  Without warning, honking, or turning on his lights or sirens, Officer Pepperman swerved his car to the left, crossed the center of the road, and intentionally drove into Mr. Robinson's path.  Compl. ¶ 16.  The car and the motorcycle collided head on; Mr. Robinson was thrown from the bike.  He was rushed to Howard University Hospital, where he was pronounced dead shortly thereafter.  Compl. ¶ 20.

Plaintiff Caroline Robinson, the decedent's mother, has filed a 24-count complaint against Officer Pepperman and the District of Columbia (the "District") both individually and as personal representative and administrator of Arnell Robinson's estate. Eight counts of the complaint contain constitutional claims.  Counts I and II allege Fourth Amendment violations of unreasonable seizure, false arrest, and excessive force against Officer Pepperman.  Count III alleges Fifth and Fourteenth amendment violations of substantive due process against Officer Pepperman.  Count IV is a 42 U.S.C. § 1983 claim against the District on the theory of municipal liability.  Counts XIII, XIV, XV, and XVI repeat the allegations set forth in Counts I - IV, but as survivorship counts as opposed to wrongful death counts.

The remaining counts allege a variety of common law claims against both defendants, including negligence, assault, battery, infliction of emotional distress, and negligent failure to hire, retain, train and supervise.  Plaintiff seeks compensatory and punitive damages plus costs and attorney's fees.

Defendants move for dismissal, or in the alternative for partial summary judgment on the constitutional claims against both defendants.[1]  Plaintiff responds that she has alleged sufficient facts in her complaint to sustain her claims at the motion to dismiss stage of the proceedings, or, alternatively, that she has set forth genuine issues of material fact to survive defendants' motion for summary judgment.

Defendants attached a declaration from Officer Pepperman to their motion.  Plaintiff attached numerous exhibits to her opposition, including several declarations and a collision assessment from a forensic consultant.  In their reply, defendants moved to strike some of the material plaintiff provided pursuant to Federal Rules of Civil Procedure 12(f) and 56(e).  The parties conducted limited additional briefing on the motion to strike.  Both motions are now ripe for determination by the Court.

---

[1] As discussed *infra*, defendants move for summary judgment on plaintiff's Fourth Amendment claim and move to dismiss plaintiff's Fifth and Fourteenth Amendment and municipal liability claims.

## II. STANDARD OF REVIEW

### A. Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). "'[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint[,]'" *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). A court must not, however, "accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Id.* In addition, "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice."
*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "[O]nly a
complaint that states a plausible claim for relief survives a
motion to dismiss." *Id.* A complaint must therefore plead
"'factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged.'" *Atherton*, 567 F.3d at 681 (quoting *Iqbal*, 129 S. Ct.
at 1949). This, in turn, "asks for more than a sheer possibility
that a defendant has acted unlawfully"; a complaint alleging
facts that are "'merely consistent with' a defendant's liability
. . . 'stops short of the line between possibility and
plausibility of entitlement to relief.'" *Iqbal,* 129 S. Ct. at
1949 (quoting *Twombly*, 550 U.S. at 557).

### B.    Summary Judgment

Under Federal Rule of Civil Procedure 56, a motion for
summary judgment shall be granted if the pleadings, depositions,
answers to interrogatories, admissions on file and affidavits
show that there is no genuine issue of material fact, and that
the moving party is entitled to judgment as a matter of law.
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). To be
material, the factual assertion must be capable of affecting the
outcome of the litigation; to be genuine, the issue must be
supported by sufficient admissible evidence that a reasonable
fact finder could find for the non-moving party. *Id*. at 248; *see*

*also Lanningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987).

In determining whether a genuine issue of material fact exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine, material issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

**III. ANALYSIS**

**A.    Fourth Amendment Claims**

Defendants move for summary judgment on plaintiff's Fourth Amendment claims, arguing that Officer Pepperman did not "seize" Mr. Robinson and therefore that no Fourth Amendment violation occurred. Plaintiff responds that she has presented a genuine issue of material fact sufficient to overcome summary judgment. For the reasons that follow, the Court agrees that a genuine issue of material fact exists as to whether Officer Pepperman effected a seizure of Mr. Robinson. Accordingly, defendants' motion for summary judgment is **DENIED**.

To establish a Fourth Amendment violation for excessive use of force by a police officer, a plaintiff must demonstrate that first, he was seized, and second, that the use of force applied in the seizure was unreasonable. *See Graham v. Connor*, 490 U.S. 386, 397 (1989); *Johnson v. Dist. of Columbia*, 528 F.3d 969, 973 (D.C. Cir. 2008). In *Brower v. County of Inyo*, the Supreme Court defined a seizure as follows:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement [], nor even whenever there is a governmentally caused and governmentally *desired* termination of movement [], but only when there is a governmental termination of freedom of movement *through means intentionally applied.*

489 U.S. 593, 596-97 (1989) (emphasis in original). In other words, a seizure "requires an intentional acquisition of physical control . . . and the detention or taking itself must be willful." *Id.* at 596.

Plaintiff's Fourth Amendment claims of excessive force are premised on the theory that Officer Pepperman intentionally drove into Mr. Robinson in order to force him to stop his motorcycle. *See, e.g.*, Compl. ¶¶ 14-17, 41, 59, 53, 54, 174-77, 182-89. Specifically, she claims that Officer Pepperman purposely swerved into the lane of Mr. Robinson's oncoming motorcycle with the intention of stopping him, "which was tantamount to effecting a traffic stop." Compl. ¶¶ 41, 174. Plaintiff alleges that Officer Pepperman intentionally swerved left into Mr. Robinson's

path while Mr. Robinson was navigating speed bumps, that Mr. Robinson was unable to swerve to avoid Officer Pepperman because there were cars parked to his right, and that Officer Pepperman then collided with Mr. Robinson, head on. Compl. ¶¶ 16-19. Plaintiff further alleges that this intentional use of force was unreasonable, since Mr. Robinson was unarmed, not engaged in imminently dangerous behavior, and since Officer Pepperman never gave any indication that he wanted Mr. Robinson to stop the motorcycle, such as flashing his lights or activating his siren. Compl. ¶¶ 51-54, 183-88.

Defendants argue that summary judgment is appropriate because Officer Pepperman had no intention of stopping Mr. Robinson, never made any contact with Mr. Robinson himself, and indeed tried to avoid the collision entirely. Defs.' Mem. at 8-10. Because there was no intent to stop Mr. Robinson, defendants claim, he was not "seized" in violation of the Fourth Amendment.[2] Defendants offer the declaration of Officer Pepperman in support of their argument. According to Officer Pepperman, he was driving down the street but stopped his vehicle when he saw the motorcycles approaching. Declaration of Officer Pepperman ("Pepperman Decl." ¶ 6). Mr. Robinson continued toward the

---

[2] Defendants make no argument regarding the second prong of the excessive force test: if indeed a seizure occurred, whether the use of force applied in effecting the seizure was unreasonable. *See Graham*, 490 U.S. at 397.

stopped police car, lost control of his motorcycle and was
"propelled into a parked car" - not Officer Pepperman's car -
which resulted in his death.   Pepperman Decl. ¶¶ 7-10.

    In her opposition, plaintiff provides declarations from two
eyewitnesses to the collision that flatly contradict Officer
Pepperman's version of events.  Adam Wilson, a neighborhood
resident, observed "the Officer driving the unmarked police
vehicle swerve[] into the path of Mr. Robinson's motorcycle.  The
Officer's vehicle was moving when he hit Mr. Robinson's
motorcycle."  Declaration of Adam Wilson ("Wilson Decl.") p. 2.
Mr. Wilson continues, "the Officer sped up as he swerved into Mr.
Robinson's lane of traffic.  He did not slow down.  The police
car crashed into Mr. Robinson's motorcycle head-on, and Mr.
Robinson's body hit the right-front of the police car and went
flying over the hood[.]"  Wilson Decl. p. 3.  Another
neighborhood resident, Kenneth Lindsay, states that he was on his
balcony overlooking the 400 block of O Street when the collision
occurred and had a clear view of the incident.  Declaration of
Kenneth Lindsay ("Lindsay Decl.") p. 1.  Mr. Lindsay also states
that Officer Pepperman swerved into Mr. Robinson's lane of
traffic and collided with the motorcycle and with Mr. Robinson.
Lindsay Decl. p. 2.  Defendants have not moved to strike either
of these declarations.  *See* Defs.' Reply/Mot. to Strike at 13-14;
*see generally* Defs.' Sur-Surreply.

As the declarations of Officer Pepperman, Mr. Wilson and Mr. Lindsay make clear, a genuine issue of material fact exists: namely, whether Officer Pepperman intentionally swerved into Mr. Robinson's lane of traffic in order to stop Mr. Robinson, thus arguably effecting a seizure under the Fourth Amendment. That dispute can only be resolved by evaluating the conflicting testimony of Officer Pepperman on the one hand, and Mr. Wilson and Mr. Lindsay on the other. The Court concludes, therefore, that summary judgment is inappropriate. *See Johnson,* 528 F.3d at 977 (quoting *Saucier v. Katz*, 533 U.S. 194, 216 (2001)(Ginsburg, J., concurring in the judgment)) ("Of course, if an excessive force claim turns on which of two conflicting stories best captures what happens on the street, [a court may] not permit summary judgment in favor of the defendant official.") Accordingly, defendants' motion for summary judgment on plaintiff's Fourth Amendment claims is **DENIED.**

### B.    Fifth and Fourteenth Amendment Claims

In Counts III and XV of her complaint, plaintiff alleges the defendants violated Mr. Robinson's Fourteenth and Fifth Amendment substantive due process rights. Defendants move to dismiss both claims. The Court addresses each of them in turn.

Plaintiff's Fourteenth Amendment claims are easily resolved. Defendants correctly point out that the Fourteenth Amendment does not apply to the District of Columbia or its officials/employees,

and plaintiff does not dispute this argument.  *See Bolling v. Sharpe*, 347 U.S. 497, 499 (1954).  Accordingly, the Court **GRANTS** defendants' motion to dismiss plaintiff's Fourteenth Amendment claims.

Defendants' motion to dismiss plaintiff's Fifth Amendment claims is less easily resolved.  Defendants assert that plaintiff asserts her Fifth Amendment claims under the same "seizure" theory as her Fourth Amendment claims, and argue that all excessive force claims must be brought under the Fourth Amendment as a matter of law.  Defs.' Reply at 4-6.  Plaintiff counters that her complaint asserts a Fifth Amendment claim as an alternative theory to her Fourth Amendment claim.  She argues that even if no seizure occurred for purposes of a Fourth Amendment violation, defendants may still be held liable for police misconduct via a substantive due process claim.  Pl.'s Opp'n at 21-24.

Determining where a Fourth Amendment excessive force claim ends and a Fifth Amendment substantive due process claim begins is not always straightforward, and this Court is not aware of authority from this Circuit that would be dispositive in this case.  However, after careful consideration the Court agrees that Plaintiff has pled her Fifth Amendment claim in the alternative, and accordingly **DENIES** defendants' motion to dismiss the Fifth Amendment claims in the complaint.

The guarantee of substantive due process "[i]s intended to prevent government officials from abusing their power, or employing it as an instrument of oppression." *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992) (internal citations omitted)). To show a substantive due process violation, plaintiff must show the governmental action at issue "can properly be characterized as arbitrary, or conscience-shocking, in a constitutional sense." *Collins*, 503 U.S. at 128. A litigant may make a substantive due process claim for police misconduct so long as her claim is not "covered by a specific constitutional provision, such as the Fourth or Eighth Amendment." *Lewis*, 523 U.S. at 843 (quoting *U.S. v. Lanier*, 520 U.S. 259, 272 n.7 (1997)). "Where a particular amendment provides an explicit textual source of constitutional protection against a particular source of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Id.* at 842 (quoting *Graham*, 490 U.S. at 395). However, when a claim of government misconduct is not "covered by" another amendment to the Constitution, substantive due process analysis may be appropriate. *Id.* at 843.

The *Lewis* Court addressed when substantive due process claims, as opposed to Fourth Amendment seizure claims, are appropriate in the context of excessive force cases. The Court

held that "only a purpose to cause harm *unrelated to the legitimate object of* arrest [or investigatory stop, or other seizure] will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation." *Id.* at 836 (emphasis added). In other words, "conduct intended to injure in some way unjustifiable by any government interest" is unlikely to be covered by the Fourth Amendment; instead, it "is the sort of official action most likely to rise to the conscience-shocking level" at issue in substantive due process cases. *Id.* at 844.

The parties have not cited cases in this Circuit which directly address whether a 'seizure' occurs, and thus the Fourth Amendment applies, when the complained-of conduct occurred outside of a criminal investigation or other form of justifiable governmental activity. However, a number of other Circuits have addressed this issue and found that "governmental conduct which is not actuated by an investigative or administrative purpose will not be considered a 'search' or 'seizure' for purposes of the Fourth Amendment." *U.S. v. Attson*, 900 F.2d 1427, 1430 (9th Cir. 1990); *see also Poe v. Leonard*, 282 F.3d 123, 136 (2d Cir. 2002) (substantive due process analysis appropriate where officer surreptitiously videotaped plaintiff undressing at police facility); *Coon v. Heron*, 181 F.3d 100, No. 97-1480, 1999 WL 357779, *2 (6th Cir. May 19, 1999) (plaintiff may proceed with

substantive due process claim where officer shot him with no provocation and for no apparent reason); *Davis v. Hillside*, 190 F.3d 167, 172-73 (3d Cir. 1999) (McKee, J., concurring) (substantive due process analysis applies where police "gratuitously rammed [] car . . . to 'teach [driver] a lesson' or to 'get even'"); *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997) (rejecting Fourth Amendment claim and applying substantive due process analysis where plaintiff alleged police officer raped her because "the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct"); *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1st Cir. 1989)(upholding substantive due process claim where police opened fire without warning on unarmed man not suspected of criminal activity); *Shillingford v. Holmes*, 634 F.2d 263, 265-66 (5th Cir. 1981), abrogated on other grounds by *Valencia v. Wiggins*, 981 F.2d 1240 (5th Cir. 1993) (substantive due process claim appropriate where police beat unarmed observer who had photographed the police arresting another man).

The allegations plaintiff makes in her substantive due process claims are consistent with *Lewis* and its progeny. She claims that Officer Pepperman had no legitimate law-enforcement purpose in his encounter with Mr. Robinson; accordingly, his actions do not constitute a seizure cognizable under the Fourth Amendment. In Counts III and XV of her complaint plaintiff

14

alleges that Officer Pepperman "intentionally obstructed Decedent, without legal cause or reason, and without notice, in an unmarked police car[.]"  Compl. ¶¶ 64, 198.  She further alleges that Officer Pepperman "swerv[ed] into the Decedent's motorcycle without any provocation or lawful reason[.]"  Compl. ¶¶ 65, 199. In her opposition to defendants' motion to dismiss, she argues:

> [I]gnoring for a moment the strong evidence of Defendant Pepperman's evidence to make a traffic stop . . . [he] misused his power as a police officer, and crashed into or swerved into and played chicken with Mr. Robinson because he was a police officer and thought he could get away with it . . . . [A] police officer cannot simply approach someone on the street and strike them with deadly force . . . whether for sport or for fun or simply to show 'em who's boss, and when a police officer does [this] he has violated the person's Fifth Amendment due process rights."

Pl.'s Opp'n at 23.

Defendants ignore this alternative theory in its entirety. Rather, they insist that plaintiff has only alleged an unconstitutional seizure under the Fourth Amendment, and accordingly is foreclosed from asserting a Fifth Amendment claim. Defs.' Reply at 4-6.  For the reasons set forth above, the Court rejects this selective reading of the complaint.  Federal Rule of Civil Procedure 8(d)(3) permits a plaintiff to plead inconsistent claims in support of alternative theories of recovery.  *See* Fed. R. Civ. P. 8(d)(3) (2009)("a party may state as many separate claims or defenses as it has, regardless of consistency.")

Reading the complaint in the light most favorable to plaintiff, the Court finds she has properly alleged a Fifth Amendment violation as an alternative theory to her Fourth Amendment claim. Accordingly, defendants' motion to dismiss plaintiff's Fifth Amendment claims is **DENIED.**

### C. Qualified Immunity

Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendants argue that Officer Pepperman did not violate Mr. Robinson's constitutional rights, thus ending the inquiry. Defs.' Mem. at 11. They do not address the second prong of the qualified immunity analysis: whether the rights at issue were "clearly established" at the time of the alleged violation. *Harlow*, 457 U.S. at 818; *see also Saucier*, 533 U.S. at 201.

As set forth above, the Court has concluded that plaintiff has articulated a violation of rights protected by the Fourth and Fifth Amendments. Therefore, the Court cannot accept defendants' argument that Officer Pepperman is immune from suit on those grounds. The Court recognizes that it may grant immunity to an official who has violated a constitutional right if that right was not clearly established at the time. However, defendants

make no argument on this issue, despite the fact that "the burden is on the official claiming immunity to demonstrate his entitlement." *Dennis v. Sparks*, 449 U.S. 24, 29 (1980). Accordingly, the Court **DENIES** qualified immunity to Officer Pepperman at this stage of the proceedings.

### D.    Municipal Liability Under § 1983

### i.    Standard of Review

Before turning to the merits of the parties' arguments on municipal liability, the Court first resolves the threshold question of whether it will convert the defendants' motion to dismiss plaintiff's municipal liability claims into one for summary judgment.

Whether to consider matters outside the pleadings in connection with a motion to dismiss is a matter wholly within the discretion of the Court. If a court chooses not to consider such matters, the motion to dismiss is resolved in accordance with Federal Rule of Civil Procedure 12. *See Dial a Car, Inc. v. Transportation, Inc.*, No. 93-2170, 1994 WL 902774, *1 (D.D.C. Sept. 8, 1994) (disregarding outside materials provided by plaintiff in opposition to motion to dismiss); *see also Ware v. Associated Milk Producers Inc.*, 614 F.2d 413, 414-415 (5th Cir. 1980) (same). This discretion also exists where, as here, a motion to dismiss is combined with a motion for summary judgment. "When a motion to dismiss is combined with a motion for summary

judgment and outside matters are considered by the court with respect only to the latter motion, the district judge may dispose of the motion either under Rule 56 or may limit its disposition to the motion to dismiss." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366 (3d ed. 2004) (citations omitted).

In this case, defendants have moved for summary judgment on plaintiff's Fourth Amendment claims, but moved to dismiss her municipal liability claims. Defendants did not attach any factual materials outside the complaint relating to the municipal liability claims. Plaintiff, however, attached a host of factual materials to her opposition, including some which could be used to support her municipal liability claim against the District. Despite these attachments, the Court notes that in her opposition memorandum, plaintiff argues only that her claim of municipal liability should survive a motion to dismiss. Pl.'s Opp'n at 21-24. Defendants attached no factual materials to their reply brief, and again argue that the municipal liability claim should be dismissed pursuant to Rule 12(b)(6). Having reviewed the arguments on municipal liability contained in the pleadings, the Court is of the view that they can and should be resolved on the basis of the complaint, without reference to the Declarations of Anna Conroy and Thomas Butler or any other materials filed by plaintiff in support of her opposition. Because the Court does

not consider these or any outside factual materials in resolving the municipal liability claims, the Court will treat defendants' motion on this issue as a motion to dismiss.

### ii.  **The District's Liability**

In order to hold a municipality liable for civil rights violations under § 1983, the municipality must have acted in accordance with a "government policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).  The failure to train, supervise or discipline city employees can constitute a policy or custom if it amounts to "'deliberate indifference' towards the constitutional rights of persons in its domain." *Daskalea v. Dist. of Columbia*, 227 F.3d 433, 441 (D.C. Cir. 2000) (internal quotations omitted). "Deliberate indifference is determined objectively, by analyzing whether the municipality knew or should have known of the risk of constitutional violations, and yet failed to respond as necessary." *Byrd v. Dist. of Columbia*, 297 F. Supp. 2d 136, 139 (D.D.C. 2003) (quoting *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1307 (D.C. Cir. 2003)).  The Supreme Court has outlined at least two ways in which deliberate indifference may be established. First, if city policymakers "know to a moral certainty" that their police officers will encounter certain situations, the need to train officers on how to respond to those situations "can be

said to be so obvious that failure to do could properly be characterized as deliberate indifference to constitutional rights." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n.10 (1989) (internal quotations omitted). Second, "it could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are deliberately indifferent to the need." *Id*.

Defendants argue that plaintiff's complaint contains merely "conclusory allegations" and that she has not pled sufficient facts to state a claim under § 1983. Defs.' Mem. at 14. The Court disagrees, and finds that plaintiff has alleged enough facts to state a plausible deliberate indifference claim against the District.

In support of her municipal liability claim, Plaintiff alleges that "it was the policy, practice and custom of [the District], endemic to its MPD, to encourage and permit officers on patrol in their vehicles to intimidate young motorcyclists, intentionally, using means including but not limited to swerving into motorcyclists' lane of traffic causing the rider to swerve, fall or lose control of the motorcycle." Compl. ¶ 75. She recounts the facts surrounding the incident between Mr. Robinson and Officer Pepperman, and then claims that similar incidents were "commonplace and were knowingly and tacitly condoned by

supervisors." Compl. ¶¶ 78, 211. She alleges that the District
"fail[ed] to investigate and pursue reports of unlawful seizures
and use of excessive force, and failed to deter such behavior by
its agents through proper training, reprimand, suspension or
dismissal, particularly with respect to incidents involving young
motorcyclists." Compl. ¶¶ 79, 212. She alleges that the
District's failure to train its officers in effectuating proper
seizures of motorcyclists, without using excessive force, created
a situation where MPD Officers were "almost certain to violate
the constitutional rights of young motorists in the District of
Columbia through unreasonable seizure, use of excessive force,
and deprivation of due process of the law, without fear of
consequence." Compl. ¶¶ 79, 212.

Taking these allegations together, the Court finds plaintiff
has alleged a specific form of misconduct: intimidating and
harassing motorcyclists by, *inter alia*, swerving into their lanes
of traffic and causing them to fall or lose control of their
vehicles. She alleges the District should have known about this
misconduct because it was "commonplace" and reported, but the
District refused to investigate or otherwise pursue the reports.
Finally, she presents a plausible causal connection between the
District's alleged failure to train, supervise, or discipline
officers regarding the alleged misconduct and the constitutional
deprivation Mr. Robinson allegedly suffered. *See City of Canton*,

21

489 U.S. at 390, n.10; *see also Anderson v. City of Blue Island*,
No. 08-7097, 2010 WL 1710761, *2 (N.D. Ill. Apr. 28, 2010).
Plaintiff has alleged enough facts to suggest she may be entitled
to relief against the District; accordingly, it would be
inappropriate to dismiss her claim at this stage of the
proceedings. Defendants' motion to dismiss plaintiff's municipal
liability claim is therefore **DENIED**.

### E. Punitive Damages

Plaintiff seeks punitive damages against the District,
alleging that its "outrageous, intentional, reckless and grossly
negligent unconstitutional acts exhibit the degree of malice to
warrant punitive damages." Compl. ¶ 88. She claims that this
case could present the type of "extraordinary circumstance" under
which this Circuit has said such damages could be appropriate,
and argues that it would be premature to decide this issue prior
to discovery. Pl.'s Opp'n at 45 (citing *Daskalea*, 227 F.3d at
447).[3] The District responds that punitive damages are never
available against the District absent an express statutory
mandate which does not exist here. Even if damages were available

---

[3] In *Daskalea,* the Court of Appeals stated that
"extraordinary circumstances" warranting punitive damages against
a municipality might be present where "a jurisdiction's taxpayers
are directly responsible for perpetrating the policies that
caused the plaintiff's injuries. . . . [or] where a municipality
or its policymakers have intentionally adopted the
unconstitutional policy that caused the damages in question." 227
F.3d at 447.

under *Daskalea's* extraordinary circumstances test, the District argues, such circumstances are not present in this case.  Defs.' Reply at 19-20.

The Court agrees with plaintiff that resolving whether she may recover punitive damages is premature.  Accordingly, defendants' motion to dismiss plaintiff's punitive damages claim is **DENIED WITHOUT PREJUDICE**.

### F.    Motion to Strike

Finally, the Court turns to defendants' motion to strike certain materials submitted by plaintiff in support of her opposition to the motion to dismiss or for summary judgment.  As set forth above, the Court did not consider any of the disputed material in resolving the defendants' motion.  Accordingly, defendants' motion to strike is **DENIED** as moot.

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the defendants' motion to dismiss, or in the alternative for summary judgment.  The Court **DENIES AS MOOT** defendants' motion to strike.  An appropriate Order accompanies this Memorandum Opinion.


**SIGNED:**     **Emmet G. Sullivan**
                **United States District Judge**
                **September 14, 2010**