**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **CAROLINE ROBINSON,** | |
| **Plaintiff,** | |
| **v.** | **Civil Action No.  09-2294 (JEB)** |
| **DISTRICT OF COLUMBIA,** *et al.*, | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

On March 6, 2009, Arnell Robinson was riding his motorcycle down O Street in Northwest Washington, when he was involved in a fatal collision with an unmarked police car. Later that year, his mother, Plaintiff Caroline Robinson, brought this suit against the Metropolitan Police Department officer who was driving the car and the District of Columbia.  A pivotal question in the case is how the accident transpired.  Now that the parties have completed extensive discovery, Robinson moves to strike Defendants' accident-reconstruction expert, Wendell Cover.  She argues that Defendants and Cover failed to comply with certain disclosure requirements for expert witnesses, that Cover is not qualified to serve as an expert, and that his opinions are unreliable.

While the Court agrees that Defendants should have exercised more care in complying with the rules of expert discovery, it believes that striking Cover's participation is unnecessarily draconian.  The Court will thus deny Plaintiff's Motion, although it will permit her to re-open Cover's deposition to inquire further about certain limited topics.

1

I.        **Procedural Background**

While some cases may proceed on an express route, this one has not.  Like the slowest local, this train has stopped at every possible station along the way.  Expert discovery was initially scheduled to close on August 30, 2011, over three years ago.  <u>See</u> Scheduling Order, Dec. 14, 2010, at 2.  Upon requests from both parties, however, the Court has extended the deadlines for expert reports and expert discovery on more than fifteen occasions.  <u>See</u> Minute Orders of May 5, 2011; July 29, 2011; Oct. 17, 2011; Jan. 23, 2012; June 19, 2012; Oct. 1, 2012; Nov. 19, 2012; Jan. 23, 2013; Feb. 22, 2013; Mar. 21, 2013; Apr. 22, 2013; July 25, 2013; Sept. 12, 2013; Dec. 6, 2013; Feb. 6, 2014; Mar. 31, 2014.  In the end, designations for Defendants' experts were due June 28, 2013, and the depositions of their experts were to take place on or before May 1, 2014.  <u>See</u> Minute Orders of Apr. 22, 2013; Mar. 31, 2014.

One of the experts whom Defendants identified is Wendell Cover.  He was retained "to evaluate and reconstruct, to the degree possible, [the] motor vehicle collision that occurred on Friday, March 06, 2009."  <u>See</u> Cover Report (ECF No. 68-3) at 1.  Defendants provided a copy of his report to Robinson on February 21, 2013.  <u>See</u> Letter from David Shurtz, Plaintiff's Counsel, to David Jackson, *et al.*, Defense Counsel, Apr. 18, 2014 (ECF No. 68-12) at 1.  But by May 1, 2014 – the final deadline for expert discovery – Defendants had yet to make him available for a deposition.

As a result, on May 6, 2014, Plaintiff filed a motion to strike Cover's report and testimony.  The motion sought to exclude him on several grounds, including that Defendants had failed to produce him for a deposition before the relevant cutoff date; he had not provided certain materials before the expert-report deadline; his analysis was deficient in certain respects; and he lacked the necessary qualifications to serve as an expert.  <u>See</u> Pl. Mem. to Preclude Wendall [*sic*]

Cover (ECF No. 62-1).  The Court dismissed that motion without prejudice and ordered that

Cover's deposition take place in early June 2014.  <u>See</u> Minute Order of May 7, 2014.  Shortly

after the deposition was completed, Plaintiff filed the present Motion, again seeking to bar

Cover's report and testimony.

## II.    Analysis

While this Court has previously cautioned Plaintiff about submitting digressive and

prolix filings, that admonition appears to have struck stony ground.  Instead, Robinson has

submitted a lengthy Motion to Strike, which frequently veers off into discussions of the merits

of the case and often skips back and forth among various arguments.  The filing, as a result, is

difficult to decipher.  The Court was, nevertheless, able to discern three principal grounds on

which Robinson challenges Cover's report and proposed testimony.  First, she asserts that

Defendants and Cover failed to comply with Rule 26(a) of the Federal Rules of Civil Procedure.

Second, she contends that Cover is not qualified to serve as an expert on the issues for which he

is proffered.  Finally, she argues that his opinions are not reliable.  The Court will analyze each

of these arguments in turn.

A.  <u>Compliance with Rule 26(a)</u>

Rule 26(a)(2) provides that "a party must disclose to the other parties the identity of any

witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705,"

which are the rules that govern expert testimony.  For proposed experts who regularly provide

expert testimony or who have been specifically retained to do so, this disclosure must ordinarily

be supplemented by a written report, prepared and signed by the witness, which includes the

substance of the expert's opinions and the "basis and reasons for them."  <u>Id.</u>  The report must

additionally contain "the facts or data considered by the witness," "any exhibits that will be used

to summarize or support" his opinions, and certain information about the witness's qualifications, his past history as an expert, and his compensation.  Id.  "The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examination at trial."  Minebea Co., Ltd. v. Papst, 231 F.R.D. 3, 5-6 (D.D.C. 2005); see also Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc., 493 F.3d 160, 167 (D.C. Cir. 2007).

Under Rule 37(c)(1), if a party fails to comply with these disclosure requirements, "the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  "In addition to or instead of this sanction," courts may provide alternative sanctions, including informing the jury of the party's failure, awarding costs and attorney fees to the prejudiced party, or any of the other sanctions listed in Rule 37(b)(2)(A)(i)-(vi).  Id.

Here, Robinson contends that Cover's disclosures fell short of Rule 26(a)'s demands in several respects.  She claims, for instance, that his report does not adequately delineate the bases for his opinions.  See, e.g., Pl. Mem. at 11-12, 17-18.  She also argues that he did not produce his CV, a list of cases in which he had previously served as an expert, and certain models, photographs, and other data prior to the June 28, 2013, deadline for Defendants' expert reports. See id. at 10-11.  Instead, he produced his CV on April 14, 2014, his list of prior cases on May 16, 2014, and the photographs, models, and exhibits on June 5, 2014, the day of his deposition. See id. at 10-12; Opp. at 9.  She further notes that he never produced court records related to a "friendly" lawsuit he filed in D.C. Superior Court to recover his fees from the District.  See Pl. Mem. at 35-36.  For all of these reasons, Robinson believes Cover's report and proposed testimony must be struck under Rule 37(c)(1).

While the Court agrees that some of the materials were produced after they should have been, it does not believe that any of these transgressions, singly or in concert, provide a basis for excluding Cover.  First, Plaintiff's allegation that the report contains insufficient detail holds no water.  She complains, for example, that he used photographs to locate the police cruiser's final "rest position" and to evaluate the damage to the cruiser and Robinson's motorcycle, but his report does not identify the specific photographs that he relied upon.  See id. at 11-12, 17.  As another example, she argues that his report did not include the variables he used to calculate the motorcycle's speed at the time of the crash.  See id. at 18-19.  From these complaints, it is clear that Robinson believes an expert's report must be so detailed as to completely eliminate the need for a deposition.  But that is not what Rule 26 requires.  See Evans v. Washington Metro. Area Transit Auth., 674 F. Supp. 2d 175, 180-81 (D.D.C. 2009); Romero v. ITW Food Equip. Grp. LLC, 289 F.R.D. 387, 389 (D.D.C. 2013).  Courts in this District have "reject[ed] the idea that 'an expert report must be sufficiently complete that no deposition of the expert should be needed to prepare to cross examine him.'"  Heller v. Dist. of Columbia, 952 F. Supp. 2d 133, 138 (D.D.C. 2013) (quoting Evans, 674 F. Supp. 2d at 180).  Indeed, "[t]he expert report . . . is not the end of the road, but a means of providing adequate notice to the other side to enable it to challenge the expert's opinions and prepare to put on expert testimony of its own."  Id. at 139.  Cover's report does just that.  It provides a complete description of the opinions he plans to offer at trial and it explains how he arrived at them.  While it may not provide the most comprehensive explanation of his planned testimony, it is sufficient.

Turning next to Cover's failure to produce his CV and list of prior cases before the relevant deadline, the Court finds that such deficiencies were harmless.  As Defendants point out, Plaintiff received Cover's CV and case list several weeks in advance of his deposition.  See Opp.

5

at 9.  As a result, she had ample time to prepare for it.  This is reflected in the fact that she was

able to question Cover about his involvement in previous cases and about his qualifications.  See

id. at 9-10.  Plaintiff's Memorandum and her Reply, moreover, focus solely on whether the

violations were substantially justified; she does not provide any indication that she was

prejudiced by receiving these documents when she did.  The late productions of the CV and case

list, therefore, do not provide a basis to strike Cover.  See Fed. R. Civ. P. 37(c)(1) (allowing

party to use witness so long as violations of Rule 26(a) or (e) are "substantially justified or . . .

harmless"); see also, e.g., Estate of Gaither ex rel. Gaither v. Dist. of Columbia, No. 03-1458,

2008 WL 5869876, at *3 (D.D.C. 2008) (magistrate judge) (declining to strike defendants'

supplemental expert report "[d]espite defendants' failures to abide by the rules set forth for

disclosures of expert reports under Rule 26" because plaintiff would "not suffer unfair surprise or

prejudice as a result of [d]efendants' late filing"); FTC v. Capital City Mortg. Corp., No. 98-

0237, 2001 WL 36132732, at *4 (D.D.C. 2001) (declining to strike plaintiffs' expert after they

failed to properly designate him because "the failure was harmless").

     The non-production of the friendly-lawsuit documents is similarly harmless.  Putting

aside the parties' disagreement about whether Defendants even had an obligation to produce

these documents, Plaintiff was able to obtain them.  See Pl. Mem. at 36.  She was aware of the

lawsuit prior to Cover's deposition and she had the opportunity to question him about it.  See

Transcript of May 7, 2014, Status Conference (ECF No. 68-14) at 3:7-4:4.  The Court, therefore,

finds that Plaintiff was not prejudiced by Defendants' decision not to produce these documents.

     The Court moves, finally, to Cover's failure to produce certain photographs, diagrams,

and 3-D models in advance of his deposition.  According to Robinson, Cover arrived at his

deposition with 256 photographs, six photogrammetric diagrams, and at least two 3-D models,

which required proprietary software to view.  See Pl. Mem. at 5.  She argues that "[g]etting this voluminous wealth of information was impossible to digest on the spot in the deposition."  Id. at 40.  She complains, additionally, that because she did not receive these materials in advance, her experts were unable to review them and help her prepare for the deposition.  See id. at 11.

With respect to the late-produced photographs, Plaintiff was not prejudiced.  She concedes that she had previously received the "police on-scene photos."  It thus appears that the only photographs to which she did not have access prior to the deposition were photographs that Cover took while inspecting the damage to Arnell Robinson's motorcycle.  See id. at 14.  Since the motorcycle itself was in Plaintiff's possession, it is difficult to see how she was harmed by Cover's failure to produce these.  See Opp. at 12.  Robinson and her experts had the ability to examine the motorcycle and prepare to depose him about his description of its damage.

The exhibits and models, however, present a slightly different story.  Cover generated 3-D models of the accident site to demonstrate that two witnesses could not have seen the collision.  See Cover Report at 7.  He also used photogrammetry to diagram the accident scene.  See id. at 3.  By not receiving these data in advance of Cover's deposition, Robinson was unable to consult her experts about them.  And although there are perhaps better and more efficient ways Plaintiff could have handled Defendants' failure to produce these data, it was Defendants' obligation under Rule 26(a) to provide them with Cover's report.  Their failure to do so was not entirely harmless.

Striking Cover, however, is far too harsh a penalty.  The harm was not great, and the "preclusion of evidence is an extreme sanction."  Richardson v. Korson, 905 F. Supp. 2d 193, 200 (D.D.C. 2012).  Because a trial date has not yet been set, the Court believes that any possible prejudice to Plaintiff can be eliminated by giving her the opportunity to further depose Cover

about these late-produced materials.  See id. at 200.  It will, accordingly, allow Plaintiff an

additional two hours to depose Cover about the diagrams and models.  In the interests of fairness

and preventing any prejudice to Plaintiff, the Court will also require that Defendants pay the

costs associated with this deposition.  See id. at 201 (requiring plaintiff to pay costs of deposition

after plaintiff did not comply with Rule 26(a) because "[i]t is within the Court's discretion to

impose sanctions – e.g., the imposition of costs – on a party who has failed to comply with the

rules governing discovery") (citation omitted).

   In sum, certain of Cover's Rule 26(a) deficiencies were harmless, but others – namely,

the failure to produce certain exhibits and diagrams before his deposition – were not.  Courts

have, however, declined to strike experts for far greater violations than these, see, e.g., English v.

Dist. of Columbia, 651 F.3d 1, 13 (D.C. Cir. 2011), and any possible prejudice to Plaintiff can be

rectified by allowing her more time to examine him in a deposition.  In declining to strike Cover,

the Court cautions Defendants that it does not condone their shortcomings here.  It expects

litigants, especially repeat players like the District, to comply with the Rules.

   B. Cover's Qualifications

   Plaintiff next suggests that Cover is not qualified to testify as an expert.  Federal Rule of

Evidence 702, which governs the admissibility of expert testimony, does not specify any

particular means for qualifying an expert; it requires only that the witness possess the

"knowledge, skill, experience, training, or education" necessary to assist the trier of fact.  As the

Supreme Court stated in the seminal opinion of Daubert v. Merrell Dow Pharmaceuticals, Inc.,

509 U.S. 579 (1993), the trial court must determine whether the proposed expert possesses "a

reliable basis in the knowledge and experience of [the relevant] discipline."  Id. at 592.  "Formal

education ordinarily suffices, and a person who holds a graduate degree typically qualifies as an

expert in his or her field."  Khairkhwa v. Obama, 793 F. Supp. 2d 1, 11 (D.D.C. 2011) (citing

Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 176-77 (5th Cir. 1990), and Am.

Gen. Life Ins. Co. v. Schoenthal Family, LLC, 555 F.3d 1331, 1338-39 (11th Cir. 2009)).  But in

the absence of such formal education, an expert may still be qualified on the basis of his or her

practical experience or training.  See id. (citing Thomas v. Newton Int'l Enters., 42 F.3d 1266,

1269-70 (9th Cir. 1994)).

      Here, Plaintiff presses several arguments that Cover is not qualified.  She first maintains

that although "Cover presents himself as an 'accident reconstruction' expert," he holds "a

singular academic degree in general studies from Catonsville Community College," which even

he acknowledges would not qualify him as an accident reconstructionist.  Pl. Mem. at 6.  She

then claims that he "cannot point to any assignment to a Major Crash Unit in his 15 years as a

State Trooper" for the Maryland State Police.  Id.  She also attacks the value of his certification

by the Accreditation Commission for Traffic Accident Reconstruction (ACTAR), noting that,

among other things, "[t]here are no academic minimum standards for taking the ACTAR test,"

and "if one is willing to pay their entrance fees, and attend enough ACTAR approved classes,

they can take the test."  Id. at 7.  Later, appearing to concede that his ACTAR certification could

qualify him "to opine as to the cause of the collision," she claims that the tools he uses here –

such as 3-D modeling and forensic mapping – fall outside of his ACTAR certification test and

that he is thus unqualified to offer opinions that rely upon them.  See Reply at 18.  Finally, she

stresses that he does not have any expertise in "the mechanism of injury," thereby undermining

his ability to testify in this case.  See Pl. Mem. at 10.

      The Court, however, has no trouble finding that Cover is qualified as an accident-

reconstruction expert.  Although he does not possess a formal degree in a relevant discipline,

education is not the exclusive means by which to qualify as an expert, see Fed. R. Evid. 702

(experts can be qualified based on "knowledge, skill, experience, training, or education")

(emphasis added); see also Khairkhwa, 793 F. Supp. 2d at 11, and his extensive training and

experience certainly do qualify him.  To begin, Plaintiff's argument that he was not assigned to a

"Major Crash Unit" when he was a state trooper is disingenuous because the Maryland State

Police did not have a team by that name.  See Opp. at 5-6.  Cover was, in fact, one of the first

troopers assigned to that department's accident-investigation and reconstruction program, see id.

at 5, and he even served as an instructor for the Maryland State Police Traffic Homicide

Investigation and Reconstruction Program from 1986 to 1989.  See Cover CV (ECF No. 68-7) at

5.

Over the last several decades, he has participated in over 70 advanced trainings, seminars,

and conferences on accident reconstruction.  Id. at 2-5.  To take just a sample from his CV, he

has participated in trainings on topics such as "Advanced Collision Investigation and

Reconstruction," "Low Speed Crash Analysis and Forensic Tire Examination," and

"Instrumentation and Testing for Crash Reconstruction."  Id. at 3-4.  He is a member of several

relevant professional associations, and he has participated in a variety of research activities on

the subject.  See id. at 5.  He has, moreover, served as a testifying expert in many state and

federal cases.  See Cover Testifying Log (ECF No. 68-11).

The Court also finds Plaintiff's argument about Cover's lack of expertise in the specific

methods he uses – i.e., 3-D modeling and photogrammetry – both meager and unpersuasive.  The

only thing Plaintiff points to in support of her argument is that the ACTAR certification exam

did not specifically test Cover on these methods and tools.  It is difficult to see the significance

of this fact, though, because his ACTAR certification does not provide the sole basis for his

qualifications.   In fact, Cover has received training in these methods.  His CV, for example,

reflects that he has participated in trainings on forensic photography and forensic mapping.  <u>See</u>

Opp. at 7; Cover CV at 2-5.

In a last-ditch argument, Plaintiff contends that because "Cover cannot testify as to the

mechanism of injury," an issue "critically important to issues of liability," and an issue for which

Defendants have not retained an expert, "his ability to testify . . . in a wrongful death case is

seriously compromised."  Pl. Mem. at 10.  Cover, however, does not claim to be an expert in this

area; his testimony concerns the accident, not the injury.  <u>See</u> Opp. at 8; <u>see also</u> Cover Report at

8-9.  Rule 702 simply does not require that each expert be qualified to testify about every aspect

of a case.

The Court thus finds that Cover has the requisite training, knowledge, and experience to

render expert opinions in this case.

C.   <u>Reliability of Cover's Opinions</u>

Robinson last argues that Cover's testimony is so analytically flawed that it cannot be

admitted.  A district court has "'broad discretion in determining whether to admit or exclude

expert testimony.'"  <u>U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.</u>, 608 F.3d 871, 895 (D.C.

Cir. 2010) (quoting <u>United States v. Gatling</u>, 96 F.3d 1511, 1523 (D.C. Cir. 1996)).  Federal Rule

of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an
> opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized
>> knowledge will help the trier of fact to understand the
>> evidence or to determine a fact in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and
>> methods; and

> (d) the expert has reliably applied the principles and
> methods to the facts of the case.

Under Rule 702, trial courts are required to act as gatekeepers who may admit expert testimony only if it is both relevant and reliable. <u>See</u> <u>Daubert</u>, 509 U.S. at 589 (citing Fed. R. Evid. 702); <u>Kumho Tire Co., Ltd. v. Carmichael</u>, 526 U.S. 137, 141 (1999) (applying <u>Daubert</u>'s holding to non-scientific expert testimony). Plaintiff does not contest that Cover's testimony is relevant. The remaining issue, therefore, is whether it is reliable.

"Under Rule 702, expert testimony is reliable if (1) it is 'based upon sufficient facts or data;' (2) it is 'the product of reliable principles and methods,' and (3) 'the witness has applied the principles and methods reliably to the facts of the case.'" <u>Harris v. Koenig</u>, 815 F. Supp. 2d 6, 8 (D.D.C. 2011). The trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." <u>Kumho</u>, 526 U.S. at 152. In all cases, however, "[t]he trial judge . . . must find that [the proffered testimony] is properly grounded, well-reasoned and not speculative before it can be admitted." Fed. R. Evid. 702 advisory committee's note (2000 amends.).

In carrying out this endeavor, the Court must bear in mind that it "assumes only a 'limited gate-keep[ing] role' directed at excluding expert testimony that is based upon 'subjective belief' or 'unsupported speculation.'" <u>Harris</u>, 815 F. Supp. 2d at 8 (quoting <u>Ambrosini v. Labarraque</u>, 101 F.3d 129, 135-36 (D.C. Cir. 1996)). It "must focus 'solely on [the expert's] principles and methodology, not on the conclusions that they generate.'" <u>Ambrosini</u>, 101 F.3d at 133 (quoting <u>Daubert</u>, 509 U.S. at 595). The Court is therefore not permitted to "pass on the merits of the expert's scientific conclusions . . . [, and it] must refrain from 'evaluat[ing] the credibility of opposing experts and the persuasiveness of competing []

12

studies.'" <u>Lakie v. SmithKline Beecham</u>, 965 F. Supp. 49, 54 (D.D.C. 1997) (quoting

<u>Ambrosini</u>, 101 F.3d at 140).

 At the same time, the Court cannot "toss the 'the decision to receive expert testimony . . .

off to the jury under a let it all in philosophy.'" <u>Boyar v. Korean Air Lines Co., Ltd.</u>, 954 F.

Supp. 4, 7 (D.D.C. 1996) (quoting <u>Joy v. Bell Helicopter Textron Inc.</u>, 999 F.2d 549, 569 (D.C.

Cir. 1993)); <u>Joy</u>, 999 F.2d at 569 (quoting <u>In re Air Crash Disaster at New Orleans, La.</u>, 795 F.2d

1230, 1233 (5th Cir. 1986)) (explaining that district court "must resist 'the temptation to answer

objections to receipt of expert testimony with the shorthand remark that the jury will give it the

weight it deserves.'").  "The issue for the Court to determine," then, "is whether this is a case

where [the expert's] assumptions amount to 'rampant speculation' and should be excluded, or

whether his assumptions merely represent a weak factual basis for his testimony that is

appropriately challenged on cross examination." <u>Boyar</u>, 954 F. Supp. at 7.

 In her Motion, Plaintiff suggests that Cover's report and testimony must be excluded

because several of his analyses are problematic.  She claims, for instance, that his speed analysis

is based on "faulty assumptions" about the number of frames per second in the video that was

used.  <u>See</u> Pl. Mem. at 24, 28.  As another example, she faults him for failing to take account of

all witness statements and depositions.  <u>See id.</u> at 20.  These, she suggests, are the types of

"analytical gaps" that make an expert's opinions unreliable and inadmissible.  <u>See</u> Pl. Mem. at

26; <u>Groobert v. President and Dirs. of Georgetown Coll.</u>, 219 F. Supp. 2d 1, 6 (D.D.C. 2002)

(quoting <u>Gen. Elec. Co. v. Joiner</u>, 522 U.S. 136, 146 (1997) ("A court may refuse to admit expert

testimony if it concludes that 'there is simply too great an analytical gap between the data and

the opinion proffered.'").

 The Court, however, will not strike the report and proposed testimony based on these

allegations, since the record demonstrates that Cover's opinions are based on sufficient data and reliable methods.  For instance, while visiting the accident site, he used police on-scene photographs to identify and measure "roadside features" in order to determine "the final rest position" of the police cruiser.  See Cover Report at 2-3.  He used photographs and an in-person inspection of the motorcycle to assess the damage to it and to the police cruiser.  Id. at 3-4.  He relied on "measurements at the accident scene, physical evidence, the vehicle's impact lines, photographs and statements" to determine the impact location.  Id. at 5.  Using video footage that captured Robinson's approach permitted Cover to calculate the variables of time and distance, which yielded a determination of his speed at the time of the accident.  Id. at 5.  He additionally employed site visits and 3-D models to evaluate two witnesses' lines of sight to show that they would have had obstructed views of the accident.  Id. at 7.  It is clear that this testimony does not rest solely upon "subjective belief or unsupported speculation."  Daubert, 509 U.S. at 590.  Nowhere does Plaintiff suggest that these methods and techniques are not the type relied upon by accident-reconstruction experts.

While Cover's trial testimony may or may not ultimately prove persuasive to a jury, it is not proper for the Court to exclude expert testimony "merely because the factual bases for an expert's opinion are weak."  Joy, 999 F.2d at 567; see also U.S. v. Philip Morris USA Inc., No. 99-2496, 2004 WL 5643764, at *1 (D.D.C. July 29, 2004) (citing Little v. Nat'l R.R. Passenger Corp., 865 F.2d 1329 (D.C. Cir. 1998), and Polk v. Ford Motor Co., 529 F.2d 259, 271 (8th Cir. 1976)) ("[E]ven though the testimony of an expert witness may carry little weight and little persuasiveness because of the weakness of its factual underpinnings, that fact in and of itself does not render the testimony inadmissible.").  Instead, these are subjects Plaintiff can address through cross-examination.  See Daubert, 509 U.S. at 596 ("Vigorous cross-examination,

presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."); see U.S. v. H&R Block, Inc., 831 F. Supp. 2d 27, 34 (D.D.C. 2011) ("[T]echnical deficiencies that can be adequately explored on cross-examination generally go to the weight, rather than the admissibility, of the evidence, unless the methodological deficiencies are so sweeping or fundamental as to render the survey wholly unreliable and therefore inadmissible.").

Last, Plaintiff's attacks on Cover's report and proposed testimony that go to his potential bias and credibility also do not provide an adequate reason to exclude him.  For example, she insists that his failure to state certain "obvious conclusion[s]" is "entirely disingenuous," that he suffers from "selective perception," and that his failure to attack certain "errors" and "obvious lies" in the police department's documents show he is a "cover-up specialist."  Pl. Mem. at 22-23; Reply at 3.  But these, too, are issues to explore through cross-examination – they are not a reason to strike Cover as an expert.  The Court, consequently, finds that Cover's opinions are sufficiently reliable to allow him to provide expert testimony in this case.

## III.    Conclusion

For the foregoing reasons, the Court will deny Plaintiff's Motion to Strike.  A contemporaneous Order will so state.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  December 2, 2014